UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Jamyron Sanders,<br><br>    Plaintiff,<br><br>v.<br><br>Martin, *et al.*,<br><br>    Defendants. | Civil No. 3:24-cv-01005-SRU<br><br><br><br>June 21, 2024 |

**RULING AND ORDER ON**
**MOTION FOR LEAVE TO PROCEED *IN FORMA PAUPERIS***

  Typically, it costs $405 to initiate a civil proceeding in federal court, composed of a $350 filing fee and a $55 administrative fee. See 28 U.S.C. § 1914.  In the prison context, a federal statute provides that the $350 filing fee can be postponed if the litigant provides, among other things, an affidavit that shows he is unable to afford it. See 28 U.S.C. § 1915(a)(1)–(b).  The issue presented in this case is whether the plaintiff, Mr. Jamyron Sanders, qualifies to have those fees postponed and subsequently proceed with his case *in forma pauperis*.

  To advance a suit *in forma pauperis*, the plaintiff must satisfy both procedural and substantive requirements.  To satisfy the procedural requirement, the plaintiff must provide an affidavit that evidences his inability to pay the fees.  The corresponding statute states that "any court of the United States may authorize the commencement, prosecution or defense of any suit…without prepayment of fees or security therefor, by a person who submits an affidavit that includes a statement of all assets…that the person is unable to pay such fees or give security therefor." 28 U.S.C. § 1915(a)(1).  When the plaintiff is a prisoner, he must also submit a "certified

copy of the trust fund account statement" from an official at the institution that covers the immediate six months preceding the filing of the complaint.  See 28 U.S.C. § 1915(a)(2).

As far as the substantive requirements are concerned, the plaintiff must show that he is unable to simultaneously pay the fees and provide himself and his dependents with the necessities of life.  The Second Circuit has held that "an *in forma pauperis* motion meets Section 1915(a)'s standard when it demonstrates that the applicant cannot 'pay or give security for the costs and still be able to provide himself and dependents with the necessities of life.'"  Rosa v. Doe, 86 F.4th 1001, 1008 (2d Cir. 2023) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948)).  The plaintiff need not be rendered "absolutely destitute" by the fees, rather if he is sufficiently impoverished then *in forma pauperis* status may be granted.  See Adkins, 335 U.S. at 339; Potnick v. E. State Hosp., 701 F.2d 243, 244 (2d Cir. 1983) (per curiam) (holding a plaintiff qualified for *in forma pauperis* status despite multiple sources of income due to him being below the poverty line).

When deciding if the plaintiff satisfies the substantive requirement, courts analyze the deposits and withdrawals in his trust fund account for the immediate six months preceding the complaint.  See Vann v. N.Y.C. Dep't of Corr., 496 F. App'x 113, 114 (2d Cir. 2012) (summary order) (explaining that courts will use prisoner trust fund accounts to determine if the allegation of poverty made by the plaintiff is true).  When considering the submitted trust fund account, if the prisoner has no cash credit at the moment of filing, the court may inquire into whether or not the prisoner "disabled himself" through non-essential purchases.  E.g., Clark v. Pappoosha, No. 3:21-cv-1690 (CSH), 2022 WL 960296, at *2 (D. Conn. Mar. 30, 2022) (quoting Hinton v. Pearson, No. 3:21-cv-863 (MPS), 2021 WL 3036921, at *2 (D. Conn. July 19, 2021)).  In other words, if a

prisoner once had enough money to pay the fees and later claims to not be able to afford them due his own spending, *in forma pauperis* status may be denied. See, e.g., Brown v. Ruiz, No. 3:20-cv-1202 (KAD), 2020 WL 6395480, at *1 (D. Conn. Nov. 2, 2020); Briand v. State of Fla., No. 4:06-cv-104-WS, 2006 WL 1890189, at *1 (N.D. Fla. July 10, 2006) ("If every inmate were permitted to simply spend funds in the canteen to avoid paying a filing fee, the *in forma pauperis* review would be a waste of time and effort."). Therefore, it is necessary to examine whether a plaintiff once had the money for the fees and what his subsequent purchases went towards. See Rosa, 86 F.4th at 1008 (granting *in forma pauperis* status after acknowledging the plaintiff made purchases to support his family); see also Clark, 2022 WL 960296, at *2; Brown, 2020 WL 6395480, at *1.

When analyzing the plaintiff's deposits and withdrawals, courts may consider the period when he is "contemplating litigation." Hinton, 2021 WL 3036921 at *2. For example, the court in Hinton denied a plaintiff *in forma pauperis* status due to excessive spending taken place after he should have been reasonably contemplating litigation. See id. Judge Shea explained that because the events that gave rise to the claim happened in June 2020, the plaintiff "was contemplating litigation when he chose to deplete his funds." Id. The court denied *in forma pauperis* status since the plaintiff had received over $3,500.00 since December 2020, and "had sufficient funds to pay the filing fee in this case but chose to spend those funds on other things…." Id. Thus, while the full six months preceding the complaint is required by statute, the period following when a plaintiff is reasonably contemplating litigation is particularly relevant. See id.; Clark, 2022 WL 960296, at *1 (holding *in forma pauperis* status should be denied when "[i]n early 2021, Clark was aware of the facts underlying the claims he seeks to advance in this action; but instead of his using his resources to file his claim, he first chose to make numerous purchases….").

3

In this case, Mr. Sanders has satisfied the statute's procedural requirements. He has provided and signed the required affidavit while leaving nothing blank. (ECF No. 2, at 1–4). The affidavit states that he spends $100 a month on food and cosmetics. (ECF No. 2, at 3). Since he is currently a prisoner, Mr. Sanders has also provided a certified trust fund account statement signed by a prison official. (ECF No. 3, at 1). Finally, the account statement covers the required period of time. Id. Evidently, the procedural requirements are met, and the issue turns on whether or not Mr. Sanders satisfies the substantive requirements of the statute.

With respect to the substantive standard, courts often deny *in forma pauperis* status to inmates who receive and spend as much money as Mr. Sanders in the six months preceding their complaints. Over the course of this six month period, he received a total of $1,314.06 in deposits. (ECF No. 3, at 2–8). Even taking into consideration the $100 a month that he spends on necessities, this would leave him with $715.88. Id. Accordingly, Mr. Sanders has received approximately three times the amount required for the filing fees and has maintained a level of income ordinarily regarded as too high to support *in forma pauperis* status. See, e.g., Clark, 2022 WL 960296 at *2 (holding that *in forma pauperis* status should be denied when the plaintiff received a total of $1,645.00 in deposits); Weed v. Semple, No. 3:24-cv-494 (SRU), slip op. at 2 (D. Conn. Apr. 4, 2024) (denying IFP status to an inmate who would have had $693.41 remaining in his account after paying the $405.00 fee); Arroyo v. Olson, No. 3:23-cv-26 (SVN), slip op. at 2 (D. Conn. Jan. 19, 2023) (denying IFP status to an inmate who had $677.50 in his trust account, and who would have had $275.50 remaining if he had paid the fee).

However, I conclude that his post-March 6th, 2024, spending is most relevant. To explain why, brief context is necessary. On September 26th, 2019, the court certified a putative class

4

action lawsuit against officials employed at Osborn Correctional Institute. See Ruling on Plaintiff's Motion for Class Certification, Toliver v. Semple, No. 3:16-cv-01899 (SRU) (D. Conn. Sept. 26, 2019), ECF No. 147. The complaint alleged similar claims to what Mr. Sanders alleges in his own complaint, including claims that the tap water provided to the prisoners was unsuitable for consumption. See id. The court ultimately decertified the class on March 6th, 2024, and the prospective class members were notified they would need to file their own lawsuits prior to the running of the statute of limitations. See Notice of Decertification, Toliver v. Semple, No. 3:16-cv-01899 (SRU) (D. Conn. Mar. 6, 2024), ECF No. 323. So, Mr. Sanders could not reasonably have known before March 6, 2024, that he would have to file his own lawsuit and pay his own filing fee.

Since Mr. Sanders could not have reasonably known he would need to pay his own fee until March 6th, 2024, the two-month period between then and the filing of his suit is the most relevant. See Hinton, 2021 WL 3036921 at *2. When this is considered, Mr. Sanders does not have enough to "pay or give security for the costs and still be able to provide himself and dependents with the necessities of life." Rosa, 86 F.4th at 1008. Starting on March 6th, Mr. Sanders received $512.95 in deposits added to an opening balance of $167.93. (ECF No. 3, at 2–4). When the $200 is taken out for his monthly essentials, this leaves him with $480.88 of available funds for this period. (ECF No. 2, at 3); (ECF No. 3, 2–4). While paying $405 in fees would not render Mr. Sanders destitute, he would have less than $100 to provide himself with the necessities of life. Evidently, Mr. Sanders would either need to forfeit his cause of action or not have anything left to pay for his essentials. This is reason to grant him *in forma pauperis* status. See Rosa, 86th F.4th at 1008.

For these reasons, the plaintiff is granted leave to proceed *in forma pauperis*. The plaintiff does not have the financial resources to cover initial fees without having to choose between supporting himself or not pursuing the matter. Since his materials have been adequately submitted, the motion is granted.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge